IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2020

**STATE OF TENNESSEE v. JOSEPH BRENNAN**

**Appeal from the Circuit Court for Sevier County**
**No. CR-23130-II      James L. Gass, Judge**

_____

**No. E2019-01186-CCA-R3-CD**
_____

The Defendant, Joseph Brennan, appeals as of right from the Sevier County Circuit Court's revocation of his probation and reinstatement of the remainder of his six-year sentence for aggravated assault. Although the Defendant acknowledges that he violated the terms of his probationary sentence, he submits that the trial court abused its discretion by requiring him to serve the balance of his sentence in custody given his expressed desire for drug treatment and need for rehabilitation. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Samantha A. McCammon, Sevierville, Tennessee, for the appellant, Joseph Brennan.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; James B. ("Jimmy") Dunn, District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On July 7, 2017, the Defendant was indicted for the intentional or knowing aggravated assault of a domestic abuse victim after he attempted to strangle his girlfriend. See Tenn. Code Ann. § 39-13-202. He thereafter, on April 9, 2018, pled guilty as charged and received a six-year sentence to be served on supervised probation. As conditions of his release, he was required to enroll and live in Mercy House; he was to have no contact with the victim; and he was to abstain from using illegal substances.

Following his release, the Defendant enrolled in Mercy House as required; he had an expected graduation date of January 5, 2019. However, the Defendant was evicted from the program in June 2018 because he had been "sneaking out of the residence home and not returning." Thereafter, the Defendant's probation officer filed a probation violation report against the Defendant on July 23, 2018, due to the Defendant's leaving and being discharged from treatment prior to completion, as well as his failure to contact his probation officer to establish reporting following discharge. The trial court issued a warrant that same day.

The warrant was amended on August 21, 2018, to add an additional violation based upon the Defendant's being arrested on July 25, 2018, for theft of property valued over $1,000. The theft allegation involved the Defendant's borrowing a woman's vehicle and failing to return it to her.

At a probation violation hearing held on September 24, 2018, the Defendant admitted to the violations. The Defendant's probation was partially revoked. He was ordered to serve six months in jail before being placed back on supervised probation. The Defendant was ordered to attend and complete inpatient drug treatment, requiring him to enroll in a treatment program within thirty days of his release.

The Defendant was released from jail and reported to his probation officer on January 30, 2019. He was given another date to report of February 11, 2019, and he reported as requested. At that time, he stated that he was living "from motel to motel" and was working "as a paid laborer for some men he knew." The Defendant then began contacting his probation officer "changing his address and asking to move and rescheduled report dates." On February 20, 2019, the Defendant failed to report to "the Forensic Social Worker appointment"; the social worker appointment was rescheduled; and the Defendant was advised to report on February 25, 2019, which he did not do.

The Defendant reported the following day, February 26, 2019, and tested positive for marijuana and methamphetamine. The Defendant told his probation officer that he was avoiding reporting due to his relapsing and knowing that he would be positive for drugs. On that same date, the Defendant completed "the A & D assessment with the Forensic Social [W]orker and scored a 4 on the TUC Drug screening." He was referred to Buffalo Valley residential treatment program, and he had a report date for that program of March 6, 2019, at 9:00 a.m. at the Knoxville Probation Office.

Thereafter, on February 27, 2019, another violation report was filed. The probation officer alleged therein that the Defendant violated the terms of his release by failing to provide a residential address; by not allowing the officer an opportunity to complete "a home check"; by failing to report for his forensic social worker appointment, as well as his subsequent appointment with his probation officer; by testing positive for

drugs; by failing to pay supervision fees; and by failing to complete a court-ordered treatment program. An arrest warrant was issued that same day.

At the subsequent revocation hearing on May 28, 2019, the twenty-six-year-old Defendant stipulated to the violations and left sentencing to the trial court's discretion. The prosecutor noted that although the probation office recommended that the Defendant serve one year and be reinstated to probation, the State was seeking full revocation. The prosecutor observed that this was the Defendant's second violation and that the Defendant had a history of absconding, as well as "some other issues." The prosecutor opined that the Defendant had "squandered his opportunity to [receive] alternative sentencing."

The Defendant indicated that he was "willing to serve the year" in accordance with the probation office's recommendation, and he admitted that he "did wrong." The Defendant asserted that he had a substance abuse problem for which he desired treatment. Relative to his attempts at seeking drug treatment, the Defendant averred that following his release from his first violation, he went to CenterPointe rehabilitation center, but because it was the holidays, he was unable to attend due to scheduling issues. He claimed that as of the present, he had an acceptance letter from Utopia treatment program, as well as a "possible bed date" at Buffalo Valley.

The Defendant also asserted that he had paid "for the last two programs" himself, those being Mercy House and Utopia. According to the Defendant, he left Mercy House because there were individuals there that continued "to abuse substances," and he did not "want to take part in it." He averred that within six days of leaving Mercy House, he had paid $800 for placement in the Utopia program but that the first violation warrant was issued before Utopia had a chance to notify his probation officer of his admittance.

The Defendant noted that he had maintained employment since his release from the first probation violation. Though he indicated that he was reporting every two weeks, he also said that he had "missed a couple of appointments because [he] was actually working at that time." Regarding his alleged transient nature, the Defendant said that he was working in the hotel industry installing electrical equipment for a company called Hospitality System, which required him to go from hotel to hotel.

The Defendant's probation officer testified, noting this was the Defendant's second violation, providing the circumstances surrounding the first violation, and detailing the facts in support of the current allegations against the Defendant. Relative to the Defendant's participation in a drug-treatment program, his probation officer stated that there was a bed available for the Defendant at Buffalo Valley on March 5, 2018, but that the Defendant "never came back to probation." The Defendant interjected and explained as follows:

He[, the Defendant's probation officer,] wanted me to report or turn myself in the day prior because it was a zero-tolerance policy on my drug tests, and he said that they had moved the bed date. After I came through court right now, they had moved the bed date and [he indicated] that I would be able to go to Buffalo Valley after we got through this process.

However, the probation officer said he did not know anything about such a claim.

Defense counsel showed the trial court the Defendant's acceptance letter from Utopia. The probation officer cautioned, "We have not had a very good success rate out of Utopia." The probation officer then explained the particulars of the Buffalo Valley residential treatment program, but he expressed his concern that the Defendant had "done this before." The trial court observed that there was nothing "concrete" before the court that indicated the Defendant could enroll in Buffalo Valley if granted probation. The probation officer relayed that the Defendant would have "to go back through the A & D assessment process with their social worker" before he could attend Buffalo Valley.

The trial court acknowledged that the Defendant had struggled with addiction, including methamphetamine usage, and that the Defendant seemingly expressed an earnest desire for treatment. However, the court observed that the Defendant had twice been given the opportunity for an alternative sentence, which included drug treatment, and that he had twice failed to comply with the conditions of his release. Accordingly, the trial court found that the Defendant had violated the conditions of his probation and ordered the Defendant to serve the balance of his six-year sentence in confinement. The Defendant filed a timely notice of appeal. The case is now before us for review.

ANALYSIS

Although the Defendant acknowledges that he violated the terms of his probation, the Defendant contends that the trial court abused its discretion by fully revoking his probationary sentence because he demonstrated a desire to continue with drug treatment and an alternative sentence would better serve to rehabilitate him. The Defendant notes that he left Mercy House because he feared a relapse and that upon leaving Mercy House, he made arrangements with another facility to receive treatment. The Defendant surmises that he should be given another opportunity because he "violated probation on an attempt to find a more suitable residential treatment facility" program, unlike other defendants who refused to cooperate in the treatment process.

The State responds that the trial court properly exercised its discretion by ordering the Defendant to serve the balance of his sentence in confinement because he has twice been given the opportunity to complete drug treatment. The State notes that the Defendant was unsuccessful the first time because he violated the treatment center's

curfew rules and was evicted, rather than leaving the program voluntarily as he claims. The State further indicates that while it does appear that the Defendant has attempted to contact other treatment facilities, nothing in the record suggests that those facilities would have been able to accept him at the time of his second probation revocation hearing.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In this case, the Defendant admitted violating the terms of his probation. This alone is substantial evidence of record to support the trial court's revocation order. See State v. Michael Emler, No. 01C01-9512-CC-00424, 1996 WL 691018, at *4 (Tenn. Crim. App. Nov. 27, 1996) (holding that where the defendant admits violation of the terms of probation, revocation by the trial court is not arbitrary or capricious). Furthermore, this court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Dannie Brumfield, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002).

Following the Defendant's initial release, the Defendant was enrolled in Mercy House; however, he was evicted from that program in June 2018 because he had been "sneaking out of the residence home and not returning." He did not report to his probation officer following his eviction. Those acts formed the basis for his first violation, and he was ordered to serve six months.

Following his release after his first violation, the Defendant did not attend a drug treatment program despite his claimed efforts to do so. The Defendant was transient and never provided his probation officer with a residential address. He missed appointments with the social worker and his probation officer. When the Defendant did report, he tested positive for methamphetamine and marijuana. The Defendant's probation officer testified that the Defendant had a report date for admission into the Buffalo Valley residential treatment program but that the Defendant failed to appear. We cannot say the trial court abused its discretion in fully revoking probation due to the Defendant's failure to abide by the terms of his probationary sentence.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE